UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
03 SEP 12 AM 9:3
U.S. D[ISTRICT COURT]
N.D. OF ALABAMA

| | |
|---|---|
| BP EXPLORATION & OIL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. CV-01-S-2191-NE |
| ) | |
| JERRY BYROM, JR., and PAUL W. ) | |
| FREDERICK, AS ADMINISTRATOR ) | |
| OF THE ESTATE OF JERRY ) | |
| BYROM, SR., ) | |
| ) | |
| Defendants. ) | |

**ENTERED**
SEP 12 2003

## MEMORANDUM OPINION

Plaintiff BP Exploration & Oil, Inc. ("BP Oil") asserts claims of breach of contract and for attorney's fees and expenses based upon personal guaranty agreements executed by defendant Jerry Byrom, Jr. and his father, Jerry Byrom, Sr.[1] This action presently is before the court on plaintiff's motion for summary judgment (doc. no. 34). Upon consideration of the pleadings, evidentiary submissions, and briefs, the court concludes that the motion is due to be granted.

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

---

[1] Jerry Byrom, Sr. died on June 23, 2001. *See* doc. no. 27. Arnold Rankin Sneed was appointed administrator of his estate by the Probate Court of Madison County, Alabama, on January 4, 2002. *Id.* On March 11, 2002, Paul Frederick replaced Mr. Sneed as administrator of the estate. *Id.* Jerry Byrom, Jr. has asserted a cross-claim against Frederick, which is not at issue here. *See* doc. no. 27.



as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

When adjudicating a motion for summary judgment, courts may only consider evidence that would be admissible at trial. *See, e.g., Victoria L. by Carol A. v. District School Board*, 741 F.2d 369, 373 (11th Cir. 1984). *Samuels v. Doctors Hospital, Inc.*, 588 F.2d 485, 486 & n.2 (5th Cir. 1979); *Broadway v. City of Montgomery*, 530 F.2d 657, 661 (5th Cir. 1976) ("Evidence [that is] inadmissible at trial cannot be used to avoid summary

2

judgment."); *Roucher v. Traders & General Insurance Co.*, 235 F.2d 423, 424 (5th Cir. 1956) ("[E]vidence inadmissible on a hearing of the case would generally be inadmissible on a motion for summary judgment, except that the court may hear the matter on affidavits . . . ."); *Soles v. Board of Commissioners of Johnson County, Georgia*, 746 F. Supp. 106, 110 (S.D. Ga. 1990) ("The court may consider only that evidence that would be admissible at trial.").

With the foregoing standards in mind, the following facts are either not disputed or are stated in the light most favorable to defendants.

## I. FACTUAL BACKGROUND

Jerry Byrom, Sr., who now is deceased, and his son, Jerry Byrom, Jr. were president and vice-president, respectively, of Byrom Oil Co., Inc. ("Byrom Oil"), a retailer of motor fuel. On April 26, 1996, the Byroms entered into a "Branded Jobber Agreement" with BP Oil, establishing a franchise relationship whereby Byrom Oil agreed to purchase at wholesale specified quantities of motor fuel from BP Oil for resale at retail under BP Oil brand-names in retail gasoline outlets operated by Byrom Oil in and around Huntsville, Alabama.[2] The term of the agreement was five years, beginning April 30, 1996.[3]

**A.    The Personal Guaranties**

The following year (on June 25, 1997), Jerry Byrom, Sr. and Jerry Byrom, Jr. each

---

[2] Doc. no. 38 (Defendant Jerry Byrom, Jr.'s Evidentiary Submission in Opposition to Motion for Summary Judgment), Ex. A.
[3] *Id.*

3

signed a personal guaranty agreement, under the terms of which they unconditionally guaranteed to BP Oil the payment of any obligation of Byrom Oil. The agreements, which were identical, recited that:

> Guarantor agrees that any extensions of credit for the purchase of goods, or services or for any other reason BP has made, or may hereafter make, to Principal [Byrom Oil] shall be considered made on the strength of, and in reliance upon, this Guaranty Agreement. No setoff, counterclaim, reduction or diminution of any obligation, or any defense of any kind or nature (other than the defense of performance by Guarantor of its obligations hereunder) shall be available to Guarantor against BP.
>
> At any time after an event of default which remains uncured, any or all of Principal's obligations shall, at BP's option, become (for the purposes of this Guaranty) immediately due and payable by the Guarantor. BP shall have the right to proceed against guarantor for the amount thereof without notice, and without first proceeding or taking action of any kind against Principal, including demand for payment. For the purposes of this Guaranty, an event of default is the happening of one or more of the following: (a) the nonpayment when due of any obligation; (b) the death, dissolution or failure of the Guarantor or Principal; (c) the filing of any petition in bankruptcy by or against Principal or Guarantor; or (d) any proceedings in bankruptcy, including a claim made for disgorgement of any payment by a trustee or debtor in possession under federal or state law.[4]

### B. The "Jobber Outlet Incentive Program" Contracts

Four years after Byrom Oil and BP Oil executed the "Branded Jobber Agreement" (i.e., on July 27, 2000), both entities entered into another agreement, a so-called "Jobber Outlet Incentive Program" ("JOIP Contract"). Pursuant to the terms of that contract, BP Oil advanced to Byrom Oil the sum of $18,000 for the construction of a BP Oil brand-name retail

---

[4]Doc. no. 34 (Plaintiff's Motion for Summary Judgment), Tab 2, Exs. A & B.

outlet to be located at 497 Dan Tibbs Road in Huntsville, Alabama.[5] That agreement provided as follows:

> A violation of or inability to comply with any term or condition of the JOIP Contract, including this paragraph, will allow Company [BP Oil], in its discretion, to terminate this JOIP Contract (or any other JOIP contract(s) with Jobber [Byrom Oil]). Company will have the right to terminate on 30 days prior written notice, subject to — except in cases of fraud — a one-time 15 day right to cure. In addition to or as an alternative to the right to terminate, Company may, at its election, suspend any and all remaining JOIP incentive payments under this JOIP Contract (or any other JOIP contract(s) with Jobber) and/or require that Jobber return all JOIP incentive payments previously paid by Company to Jobber. If Company elects this remedy, Jobber will be required to return all incentive payments . . . .[6]

The contract further provided that if Byrom Oil violated, or was unable to comply with, the terms of the agreement during the first four years, Byrom Oil would be required, at BP Oil's election, to reimburse one hundred percent of the incentive funds.[7]

According to plaintiff's second amended complaint, BP Oil and Byrom Oil entered into another such agreement, but that contract does not appear in the record. BP Oil's contention that it advanced the total sum of $36,000 to Byrom Oil pursuant to the JOIP Contract is supported by the affidavit of Frank B. Wodzisz, a BP Oil credit manager, who explained that a copy of the contract could not be located, but that the terms were identical to the one described above.[8] This contention was not contested by defendants.

Less than one year later, during February of 2001, Byrom Oil ceased to operate those

---

[5]*Id.*, Ex. E.
[6]*Id.* at page designated "BP 0005."
[7]*Id.*
[8]*Id.*, Tab 2.

retail outlets for which Byrom Oil had received incentive funds pursuant to the JOIP Contract. That event violated the terms of the contract, and BP Oil seeks repayment of the sum of $36,000 — one hundred percent of the funds advanced — plus applicable interest, because the violation of the contract occurred within the first four years of the contract.

**C.     The Promissory Note**

As of January of 2001, Byrom Oil was indebted to BP Oil for the sum of approximately $350,000.[9] In order to satisfy this obligation, Jerry Byrom, Jr. signed a promissory note on behalf of Byrom Oil, pursuant to which Byrom Oil agreed to pay to BP Oil the principal sum of $303,546.19 in thirty-eight weekly installments of $8,929.26 each. Interest was to be calculated at the rate of seven percent per annum, resulting in $35,765.83 in interest charges. Accordingly, the entire sum due under the note was $339,312.02. The note contained an acceleration clause, providing that upon default of any installment, all subsequent installments would become at once due and payable with interest at the rate of eighteen percent per annum. The note also provided that:

> if proceedings are commenced to collect this Note by process of law, BP Oil Co., or legal holder, shall be entitled to recover in such action not only the unpaid principal amount of this Note and interest thereon, *but also its reasonable attorney's fees and legal expenses.*[10]

The first installment was due on or before January 22, 2001.[11]

---

[9] *Id.*, Tab 1 & Ex. C.
[10] *Id.*, Ex. C (emphasis supplied).
[11] *Id.*

6

Byrom Oil made no installment payments,[12] and neither Jerry Byrom, Sr., his estate, nor Jerry Byrom, Jr. has repaid the sum due to BP Oil pursuant to the promissory note and personal guaranties.[13]

**D.     Byrom Oil's Bankruptcy Petition**

Byrom Oil filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Alabama on February 11, 2001.[14] Under the terms of the personal guaranties executed by Jerry Byrom, Sr. and Jerry Byrom, Jr., this event constituted default of the agreement, and made the obligations of Byrom Oil to BP Oil immediately due and payable.

## II. DISCUSSION

BP Oil contends that the estate of Jerry Byrom, Sr. and Jerry Byrom, Jr. are obligated to repay the debts of Byrom Oil in accordance with the personal guaranty agreements that each signed.   Jerry Byrom, Jr. disputes the enforceability of the personal guaranty agreements, asserting that: (1) the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.*, rendered the personal guaranty agreements invalid and unenforceable; (2) there was no consideration supporting the personal guaranty agreements; and, (3) Jerry Byrom, Sr. and Jerry Byrom, Jr. executed the agreements under economic duress.[15] Paul W. Frederick, administrator of the estate of Jerry Byrom, Sr., asserts that there is a genuine issue of material

---

[12] Doc. no. 34 (Plaintiff's Motion for Summary Judgment), Tab 1.
[13] *Id.*
[14] *Id.*, Tab 2 (Affidavit of Frank B. Wodzisz), at 2 ¶ 8.
[15] *See* doc. no. 40.

fact regarding whether the agreements were supported by consideration, and joins in the argument of Jerry Byrom, Jr. that the personal guaranty agreements are unenforceable.[16] In its reply brief, BP Oil contends that defendants may not assert the defenses based on the Petroleum Marketing Practices Act and economic duress, because they are affirmative defenses that were not raised by defendants in their answers, as required by Federal Rule of Civil Procedure 8(c).[17]

The court finds the arguments of BP Oil relating to the defenses based on the Petroleum Marketing Practices Act and economic duress to be persuasive and well taken. For all of the reasons stated by BP Oil in its reply brief, which the court adopts, the court concludes that defendants have waived defenses to enforcement of the personal guaranty agreements that were based on the Petroleum Marketing Practices Act and economic duress.

Defendants' remaining defense, that the personal guaranty agreements were not supported by consideration, bears discussion.[18] Although neither party has raised this issue, the court first must determine which state's law applies.

---

[16]Doc. no. 39 (Opposition to Motion for Summary Judgment).

[17]That rule provides, in pertinent part:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

Fed. R. Civ. P. 8(c).

[18]In his brief in opposition to plaintiff's motion for summary judgment, Jerry Byrom, Jr. admits that he executed the personal guaranty agreement and that the sums sought by BP Oil are correct, but contends alternatively that the agreement was invalid or unsupported by consideration. Doc. no. 40 (Brief in Opposition to BP's Motion for Summary Judgment), at 5.

This controversy turns on the interpretation of a contract. BP Oil is a corporation organized under the laws of Ohio, with its principal place of business in Illinois. Jerry Byrom, Jr. is a citizen of the State of Alabama; further, pursuant to 28 U.S.C. § 1332(c)(2),[19] defendant Paul W. Frederick, in his representative capacity of administrator of the estate of Jerry Byrom, Sr., deceased, also is a citizen of the State of Alabama. The action was commenced in this district. The Supreme Court commands that, where diversity of citizenship is the basis of jurisdiction, the district court is to apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021-22, 85 L. Ed. 1477 (1941).

Alabama's choice of law rule provides that "the law of the state wherein the contract was executed is determinative of the rights and liabilities of the parties to the contract." *Harrison v. Insurance Company of North America,* 318 So. 2d 253, 257 (Ala. 1975) (citing *Furst & Thomas v. Sandlin*, 208 Ala. 490, 94 So. 740 (1922)). There is, however, an exception to this general rule of *lex loci contractus*: *i.e.,* "where the parties appear to have legally contracted with reference to the law of another jurisdiction." *J.R. Watkins Co. v. Hill,* 214 Ala. 507, 108 So. 244, 245 (1926).

Here, the parties merely *assumed* that Alabama law applies;[20] and, arguably, it would

---

[19]The relevant portion of the statute provides that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent. . . ." 28 U.S.C. § 1332(c)(2).

[20]Because defendant Paul Frederick has "joined in" the arguments made by Jerry Byrom, Jr., for purposes of this discussion, the court will consider those arguments specifically made by Jerry Byrom, Jr. to have been advanced by both defendants.

9

apply under the doctrine of *lex loci contractus*.[21] Notwithstanding the parties' uncritical assumptions, the personal guaranty agreements clearly state: "The provisions of this instrument and the respective rights and duties of Guarantor and BP hereunder shall be interpreted and determined in accordance with *Ohio law*."[22] In view of this clear and unambiguous statement of the parties' agreement, the court will apply Ohio law.

The personal guaranty agreements recite the following with regard to the consideration therefor:

> IN CONSIDERATION OF the sum of One Dollar ($1.00) and other valuable consideration, receipt of which is hereby acknowledged, the undersigned, or if more than one, each of them jointly and severally, (collectively, the "Guarantor"), unconditionally guarantees, to BP EXPLORATION OIL, INC., its divisions and subsidiaries and their successors and assigns ("BP"), the payment of any obligation or part thereof: BYROM OIL CO., INC., 605 OAKWOOD AVE NW, HUNTSVILLE, AL 35811 ("Principal") to BP, whether such obligation now exists or is incurred hereafter and in whatever form it may be evidenced.
>
> Guarantor agrees that any extensions of credit for the purchase of goods, or services or for any other reason BP has made, or may hereafter make, to Principal shall be considered made on the strength of, and in reliance upon, this Guaranty Agreement.[23]

Under the law of Ohio, to be enforceable, a written guaranty must be supported by consideration. *Silberman v. National Bank of Cleveland*, 36 Ohio App. 442, 446, 173 N.E. 16, 18 (Ohio Ct. App. 1930). "Any act of the creditor from which the principal debtor

---

[21] *See Black's Law Dictionary* 923 (7th ed. 1999) ("The law of the place where a contract is executed or to be performed.").
[22] Doc. no. 34 (Plaintiff's Motion for Summary Judgment), Tab 2, Exs. A & B (emphasis supplied).
[23] *Id.*

10

derives a benefit or advantage, or from which the creditor derives any labor, detriment, or inconvenience, incurs any liability, or is exposed to any loss, is a sufficient consideration." 52 Ohio Jur. 3d *Guaranty and Suretyship* § 20, *available at* WL OHJUR GUARANTY § 20 (database updated June 2003). The further extension of credit supplies consideration for a guaranty. *Id.* (citing *Silberman*, 36 Ohio App. at 447, 173 N.E. at 18).

Defendants concede, albeit based on principles of Alabama law, that "future promises of extensions of credit constitute consideration for personal guaranty agreements."[24] Even so, defendants argue that

> the fact that the Franchise already required the sale by BP to Byrom Oil of quantities of gasoline, such a future extension of credit provision does not, under the facts of his case, constitute consideration. In other words, under the terms of the Franchise, BP could have required Byrom Oil to purchase gasoline on a cash-on-delivery (COD) basis. It could not, however, as of June 25, 1997, despite its threat to Byrom Oil, terminate the contract and cease selling gasoline to Byrom Oil. Accordingly, the provision regarding future extensions of credit is superfluous due to the requirements of the franchise.[25]

This argument is, at best, unpersuasive. By executing the personal guaranty agreements, defendants acknowledged receipt of consideration. Moreover, the fact that BP Oil in fact extended credit to Byrom Oil — of which the promissory note executed by Jerry Byrom, Jr. is evidence — in order to facilitate satisfaction of Byrom Oil's indebtedness to BP Oil supplies the requisite consideration. Finally, defendants do not contest plaintiff's assertion that they are entitled to attorney's fees and legal costs for bringing this action, as provided

---

[24]Doc. no. 40 (Brief in Opposition to BP's Motion for Summary Judgment), at 7.
[25]*Id.*

in the promissory note executed by Jerry Byrom, Jr.[26]

For all of the foregoing reasons, plaintiff's motion for summary judgment is due to be granted. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this **12th** day of September, 2003.

*Lynwood Smith*
United States District Judge

---

[26]Specifically, the promissory note states:

if proceedings are commenced to collect this Note by process of law, BP Oil Co., or legal holder, shall be entitled to recover in such action not only the unpaid principal amount of this Note and interest thereon, but also its reasonable attorney's fees and legal expenses.

Doc. no. 1 (Complaint), ex. B.